Filed 9/7/23  Estate of Bush CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| Estate of LERAE BRITAIN MOELLER BUSH, Deceased. | |
| CAROLINE LEE HOLMES et al., Plaintiffs and Respondents, v. GIOVANNI A.C. BUSH, Defendant and Appellant; | E079439 (Super.Ct.Nos. PRIN1801843, PRIN1802480) |
| GIOVANNI A.C. BUSH, Petitioner and Appellant. v. CAROLINE LEE HOLMES et al., Objectors and Respondents | E079539 (Super.Ct.No. PRIN1802480) OPINION |

APPEAL from the Superior Court of Riverside County.  John G. Evans, Judge.

Affirmed.

REQUEST FOR JUDICIAL NOTICE.  Granted.

Giovanni A.C. Bush, in pro. per., for Defendant, Appellant and Petitioner.

Bochnewich Law Offices and Peter M. Bochnewich for Plaintiff, Respondent and Objector Caroline Lee Holmes.

Sklar & Sklar and Bryan E. Sklar for Plaintiff and Respondent Jennifer Haas.

Lerae Bush amended her living trust several times. Initially, the successor trustee was Caroline Lee Holmes; however, after Bush legally adopted Noel Montes Cazares,[1] she made him the successor trustee. She also gave the trustee more and more discretion to choose the beneficiaries.

Cazares was never a beneficiary of the trust. Under the terms of the trust, however, if he were successor trustee, he could choose the beneficiaries of the bulk of the trust corpus — he could even choose himself (although Holmes argues that this would be prohibited as self-dealing by a fiduciary).

Bush died in a fire. Cazares was arrested and charged with her murder. The trial court therefore removed him as trustee, "until all matters related to the death of [Bush] are fully understood and adjudicated, or further order of the Court," and it appointed Holmes and Jennifer Haas, a professional independent fiduciary, as cotrustees.[2]

---

[1]     After the adoption, Cazares took the name Giovanni Adakaris Cazares Bush. However, he refers to himself as "Noel Cazares/Giovanni Bush," suggesting he does not mind being referred to by his former name. To avoid confusion, we refer to him as "Cazares" and to Lerae Bush as "Bush."

[2]     Holmes and Haas have consistently taken identical positions in the litigation. Accordingly, all references to Holmes include Haas, unless the context otherwise requires.

2

Holmes filed a petition seeking approval of her choice of beneficiaries. Cazares — still in jail — asked the trial court to stay the petition "until my criminal issues are resolved." The trial court granted Holmes's petition; it ruled that, because Cazares was not a trustee or a beneficiary, he had no standing to oppose it. Cazares attempted to appeal, but his notice of appeal was untimely.

Thereafter, the charges against Cazares were dismissed, and his arrest record was expunged. He then petitioned to be appointed trustee (and executor of Bush's estate). The trial court denied these petitions, ruling again that he lacked standing.

From one point of view, this seems deeply unfair. Cazares had been removed as trustee because of the criminal charges against him. Once he was a free man, it would seem he should be entitled to be trustee again; at a minimum, it would seem he should have standing to request reappointment.

Another point of view, however, is that the moving finger writes; and having writ, moves on. Cazares had to be removed — if only because he was in jail and unable to fulfill the duties of trustee; he conceded as much below. Holmes, in her capacity as trustee, was entitled to choose the beneficiaries. The trial court ruled that Cazares lacked standing to oppose her doing so. Because he failed to file a timely appeal, he must be deemed to have acquiesced in that ruling. He is not allowed to undermine it now.

# I

## STATEMENT OF FACTS

In 2014, Bush established a living trust. She named Holmes as the original successor trustee. The original beneficiaries were all charities, except that the trustee had discretion regarding the distribution of tangible personal property.

At the same time, Bush executed a pour-over will. She nominated as executor "the then-acting Trustee or Trustees" of her trust.

Later in 2014, Bush amended the trust so as to also give the trustee discretion regarding the distribution of certain real property.

Still later in 2014, she further amended the trust so as to name Holmes and Cazares as successor cotrustees.

In January 2015, she amended the trust so as (1) to remove all charitable beneficiaries (except that any dog-related art was still to go to the "Dog Museum"), (2) to give the trustee complete discretion to distribute the trust corpus (other than dog-related art), and (3) to remove Holmes as successor trustee, leaving Cazares as the sole successor trustee.

In February 2015, Bush legally adopted Cazares.

In July 2015, Bush made one last amendment to the trust, naming Cazares as cotrustee with her during her lifetime, as well as the sole successor trustee.

In February 2018, Bush died in a fire at her home in Bloomington, Indiana. Cazares was arrested and charged with her murder, along with arson and other crimes. In

2020, he was released from jail. In 2021, the charges against him were dismissed. In 2022, his arrest record was expunged.

## II

## STATEMENT OF THE CASE

In May 2018, Holmes started a trust proceeding by filing a petition to remove Cazares as trustee and to be appointed trustee herself, either as sole trustee or as cotrustee with an independent fiduciary. She argued that he was disqualified because he had murdered Bush and/or had obtained amendments to the trust by fraud or undue influence; and, in any event, he was unavailable to act as trustee while he was in jail.

Cazares's response is not in the record. He tells us, however, that he did not object to the petition, provided the trial court appointed an independent cotrustee.

The trial court granted the petition. Thus, it removed Cazares as trustee "until all matters related to the death of [Bush] are fully understood and adjudicated, or further order of the Court," and it appointed Holmes and Haas.

In October 2018, Holmes started an estate proceeding by filing a petition for probate of Bush's will and for letters of administration. The trial court granted the petition and appointed her as special administrator.

In 2020, Holmes filed a petition in the trust matter to give her discretion to determine the beneficiaries of the trust. She proposed to distribute the trust corpus in accordance with the original version of the trust, including to the originally designated

charities.  Cazares filed an opposition, asking that the petition be stayed "until my criminal issues are resolved."

On March 17, 2020, the trial court held a hearing on the petition.  At the time, Cazares was still in jail in Indiana.  His criminal defense counsel notified the court clerk that Cazares could not appear telephonically because he was under a COVID-19 quarantine.

On March 24, 2020, the trial court granted Holmes's petition.  It ruled that Cazares had no standing to object to the petition, because he was neither a trustee nor a beneficiary.  It also denied Cazares's request for a stay.

On September 18, 2020, Cazares filed a notice of appeal.[3]  However, we dismissed the appeal as untimely.[4]

In October 2021, in the trust matter, and in November 2021, in the estate matter, Cazares filed essentially identical petitions to have himself appointed as executor of

---

[3]     Holmes's request for judicial notice of certain orders in the previous appeal, which we reserved for consideration with the appeal, is hereby granted.

[4]     At oral argument, Cazares asserted that he was in jail at the time, and notice of entry of the March 24, 2020, if served, was never delivered to him.  Thus, he assumed that he had 180 days after the order to appeal.  (See Cal. Rules of Court, rule 8.104(a)(1).)

None of this is in the record.  In any event, "neither mistake, inadvertence, accident, misfortune, estoppel nor waiver can afford relief from the jurisdictional necessity of filing a timely notice of appeal.  [Citation.]" (*Stuart Whitman, Inc. v. Cataldo* (1986) 180 Cal.App.3d 1109, 1113.)  Moreover, Cazares has never sought equitable relief from the order.  (See *Estate of Hanley* (1943) 23 Cal.2d 120, 124.)

Bush's estate and as trustee of her trust, on the ground that the charges against him had been dismissed.**5**

On January 24, 2022, the trial court denied the petition in the trust matter. With respect to Cazares's request to be appointed trustee, it ruled again that he lacked standing.

On January 27, 2022, the trial court denied the petition in the estate matter, without prejudice, because Cazares had not used the mandatory form.

In March 2022, in both matters, Cazares filed new petitions to be appointed as trustee and executor.

On June 28, 2022, the trial court denied both petitions. It ruled again that Cazares lacked standing; it also ruled that its order of March 24, 2020 was "law of the case."

In the trust matter, Cazares filed a notice of appeal from the orders of January 24 and June 28, 2022. In the estate matter, he filed a notice of appeal from the orders of January 27 and June 28, 2022.

---

**5** Holmes asserts that these petitions did not seek to *remove her* as trustee and executor, respectively. However, Cazares sought to be appointed "*the* trustee" and "*the* executor." (Capitalization altered; italics added.) He argued that the appointment of Holmes had been "interim and temporary." In context — and in light of Cazares's pro. per. status — it is clear that he was seeking to remove Holmes and to substitute himself.

## III

## CAZARES'S INABILITY TO ATTEND THE MARCH 17, 2020 HEARING

Cazares contends that, because he was not able to be present or represented at the hearing on March 17, 2020 (at which the issue of his standing was raised for the first time), the trial court erred by ruling that he did not have standing.[6]

Holmes responds that Cazares has forfeited this contention by failing to support it with argument and citation of authority. Not so. Cazares cites and quotes arguments from *Payne v. Superior Court* (1976) 17 Cal.3d 908 and *Apollo v. Gyaami* (2008) 167 Cal.App.4th 1468, both dealing with an indigent prisoner's right of access to the courts. Holmes makes no effort to come to grips with these authorities.

However, we have no jurisdiction to review the March 24, 2020 order. This appeal is from the orders entered on January 24, January 27, and June 28, 2022. Even assuming that, in hindsight, the order of March 24, 2020 was erroneous or even unconstitutional, we cannot reverse it.

In any event, Cazares forfeited this contention by failing to raise it at any time below. (See *Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1074.) Even a due process claim can be forfeited by failure to raise it in the trial court. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 221-222; *In re Cynthia C.* (1997) 58 Cal.App.4th

---

**6** In the caption to this argument, Cazares implies that the trial court also erred because it did not hold an evidentiary hearing. He has forfeited any such argument by failing to support it with argument and citation of authority. (Cal. Rules of Court, rule 8.204(a)(1)(B); *Gerlach v. K. Hovnanian's Four Seasons at Beaumont, LLC* (2022) 82 Cal.App.5th 303, 312.)

8

1479, 1491.) He had his criminal defense counsel notify the trial court that he could not be present; however, that attorney did not relay any request for a continuance nor any objection to proceeding.

Even assuming it was impracticable for Cazares to object at the time, he still did not object later, when he did appear. And he never sought to set aside the March 24, 2020 order on the ground that he had been unable to appear. ""'"It is the general rule applicable in civil cases that a constitutional question must be raised at the earliest opportunity or it will be considered as waived"' [citation]." (*Hale v. Morgan* (1978) 22 Cal.3d 388, 394.)

IV

STANDING

Cazares contends the trial court erred by ruling that he did not have standing to seek to be appointed as trustee and/or executor.

Rather conspicuously, Holmes does not attempt to defend *on the merits* the trial court's various orders that Cazares lacked standing. Instead, she argues that: (1) Cazares's brief fails to provide argument and citation of authority; (2) Cazares's arguments relate solely to the March 24, 2020 order; (3) the March 24, 2020 order cannot be challenged in this appeal; (4) granting Cazares's petitions would have resulted in prohibited self-dealing; and (5) any error was harmless.

9

A.     *Failure to Provide Argument and Authority.*

As mentioned, Holmes once again responds that Cazares has forfeited this contention by failing to support it with argument and citation of authority. But again, not so. He cited Probate Code section 17200;[7] he also cited and quoted extensively from *Barefoot v. Jennings* (2020) 8 Cal.5th 822 (*Barefoot*). As we will see, these are the controlling authorities.

Under section 17200, "*a trustee or beneficiary* of a trust may petition the court . . . concerning the internal affairs of the trust" (§ 17200, subd. (a), italics added), including "[a]ppointing or removing a trustee" (§ 17200, subd. (a)(10)). "'Trustee' includes an original, additional, or successor trustee, whether or not appointed or confirmed by a court." (§ 84.)[8]

*Barefoot* is the leading case on standing under section 17200. There, under the original trust, three of the settlor's daughters were beneficiaries. The settlor then amended the trust so as to disinherit one of the daughters (the plaintiff) and to remove her as successor trustee. (*Barefoot*, *supra*, 8 Cal.5th at p. 825.) After the settlor's death, the plaintiff filed a petition alleging that the amendments were invalid, based on incompetence, undue influence, and fraud. The trial court dismissed the petition; it ruled

---

**7**     All further statutory citations are to the Probate Code.

**8**     Arguably, under this definition of a "trustee," Cazares was still a trustee, even though he had been removed, because he had been named as successor trustee in the trust instrument. However, we do not rest our opinion on this point.

10

that the plaintiff lacked standing because she was neither a trustee nor a beneficiary. (*Id.* at p. 826.)

The Supreme Court reversed. (*Barefoot*, *supra*, 8 Cal.5th at p. 830.) It noted that section 17200 allows a beneficiary to petition the court to determine whether a trust exists or to determine the validity of a trust provision, including an amendment. (*Id.* at p. 827.) It also noted that "as a general matter, the Probate Code '"was intended to broaden the jurisdiction of the probate court so as to give that court jurisdiction over practically all controversies which might arise between the trustees and those claiming to be beneficiaries under the trust."'" [Citation.]" (*Ibid.*) "[A]n expansive reading of the standing afforded to trust challenges under section 17200 'not only makes sense as a matter of judicial economy, but it also recognizes the probate court's inherent power to decide all incidental issues necessary to carry out its express powers to supervise the administration of the trust.' [Citation.]" (*Id.* at pp. 827–828.)

The court therefore held: "[C]laims that trust provisions or amendments are the product of incompetence, undue influence, or fraud, as is alleged here, should be decided by the probate court, if the invalidity of those provisions or amendments would render the challenger a beneficiary of the trust. [Citation.] So when a plaintiff claims to be a rightful beneficiary of a trust if challenged amendments are deemed invalid, she has standing to petition the probate court under section 17200." (*Barefoot*, *supra*, 8 Cal.5th at p. 828.) "To hold other than we do today would be to insulate those persons who improperly manipulate a trust settlor to benefit themselves against a probate petition.

Today's narrow holding in fact provides an orderly and expeditious mechanism for limited challenges like plaintiff's to be litigated early in the probate process, in probate court, and to ensure that the settlor's intent is honored. [Citation.]" (*Id*. at p. 829.)

Holmes argues that *Barefoot* gives standing only to would-be beneficiaries, not would-be trustees. This is a distinction without a difference. It both situations, an "expansive reading" of the standing requirement of section 17200 both "makes sense as a matter of judicial economy" and "recognizes the probate court's inherent power to decide all incidental issues necessary to carry out its express powers to supervise the administration of the trust." (See *Barefoot*, *supra*, 8 Cal.5th at p. 828.) And in both instances, "claims that trust provisions or amendments are the product of incompetence, undue influence, or fraud . . . should be decided by the probate court . . . ." (See *ibid*.)

We therefore conclude that, under section 17200 and *Barefoot*, Cazares had standing to seek to be appointed as trustee. A fortiori, we conclude that he has not forfeited his claim of standing by failing to cite appropriate authorities.

B.      *Failure to Challenge the January 24, January 27, and June 28, 2022*
         *Orders*.

Holmes also argues that Cazares's argument is directed solely at the March 24, 2020 order and does not mention any of the subsequent orders. Cazares does say that he "clearly had standing as a trustee and a beneficiary *to challenge the attempted distribution by* [*Holmes*]" (italics added), implying that he is attacking the March 24, 2020 order. However, he also says "the Court *first* concluded on March 24, 2020 that

12

[he] had no 'standing' . . . ." (Italics added.)  He goes on to say broadly that "under the

Amendments to the trust [he] is both a trustee and beneficiary who has the right to

challenge a trust proceeding that ignores those amendments."  As (1) this is an appeal

from the January 24, January 27, and June 28, 2022 orders, (2) his arguments apply to

those orders, and (3) he is in pro. per., it is clear enough that he is challenging these latter

orders.

C.     *The Preclusive Effect of the March 24, 2020 Order*.

Next, Holmes argues that the March 24, 2020 order cannot be challenged in this

appeal.  That is true; moreover, it is fatal to Cazares's challenge to the later orders.

1.     *The issues determined by the March 24, 2020 order*.

Because Cazares did not file a timely appeal from the March 24, 2020 order, it is

binding on him.  "If an order is appealable, . . . and no timely appeal is taken therefrom,

the issues determined by the order are res judicata.  [Citation.]" (*In re Matthew C.* (1993)

6 Cal.4th 386, 393.)  Indeed, "[a] party's failure to file a timely appeal from an

appealable order generally shows acquiescence in the ruling [citations]." (*People v.

DeLouize* (2004) 32 Cal.4th 1223, 1232; accord, *American Enterprise, Inc. v. Van Winkle*

(1952) 39 Cal.2d 210, 221.)

The question, then, is whether the "issues determined" in the March 24, 2020

order are dispositive of Cazares's later petitions.

In the March 24, 2020 order, the question was not whether Cazares had standing to

*bring* a petition; it was whether he had standing to *oppose Holmes's* petition.  Section

13

17200 does not say who can oppose a petition. Under section 17203, however, notice of a petition must be served on all trustees, all beneficiaries, and all other persons "whose right, title, or interest would be affected by the petition . . . ." (§ 17203, subds. (a)(1), (a)(2), (b).) It follows that all such persons also have standing to object to the petition. Otherwise, a person could be deprived of a property interest without an opportunity to be heard, in violation of due process. (See *Fuentes v. Shevin* (1972) 407 U.S. 67, 96.)

Cazares had been named as the sole successor trustee, with discretion to choose the beneficiaries of the bulk of the trust; granting Holmes's petition deprived him of that. Thus, he was entitled to notice. (See *Estate of Sigourney* (2001) 93 Cal.App.4th 593, 603–605 [right to be trustee and right to appoint trustee were property interests protected by due process, entitling holder to notice].) Indeed, Holmes conceded that he was entitled to notice and gave him notice. It follows that he had standing to oppose the petition.

Thus, the March 24, 2020 order was erroneous in two distinct respects. First, the trial court ruled, erroneously, that Cazares had to be a trustee or a beneficiary to oppose Holmes's petition. (See this part, *ante*.) Second, it ruled, erroneously, that he did not qualify as either a trustee or a beneficiary within the meaning of section 17200. (See part IV.A, *ante*.) The second ruling is the crucial one; even though it was erroneous, it was binding on Cazares in the trust matter.

14

2.     *The January 24, 2022 order in the trust matter*.

On January 24, 2022, the trial court ruled that Cazares did not have standing to seek to be appointed as trustee because he was not a trustee or a beneficiary. The March 24, 2020 order had already determined this identical issue. Hence, Cazares is bound, and the January 24, 2022 order must be affirmed.

3.     *The January 27, 2022 order in the estate matter*.

On January 27, 2022, the trial court denied Cazares's petition in the estate matter, without prejudice, because he had not used the mandatory form. He does not argue that this was error; he does not discuss the form snafu at all. Thus, he has forfeited any challenge to this order.

4.     *The June 28, 2022 order in the trust matter*.

The analysis that applies to the January 24, 2022 order (see part IV.C.2, *ante*), applies equally to the June 28, 2022 order. The March 24, 2020 order, ruling that Cazares was not a trustee or beneficiary, required the trial court to deny his petition.

5.     *The June 28, 2022 order in the estate matter*.

The trial court ruled that the March 24, 2020 order required the denial of the petition in the estate matter because it was "law of the case." That was incorrect. The doctrine of law of the case governs the effect of a prior *appellate opinion* on subsequent proceedings in the same case. (*Leider v. Lewis* (2017) 2 Cal.5th 1121, 1127.) Here, there is no prior appellate opinion; the prior appeal was dismissed.

Probably the trial court was referring to the doctrine we have already discussed —
that an order that is appealable but not appealed is conclusive in further proceedings in
the same case. As discussed in part IV.C.4, *ante*, with respect to the trust matter, that was
absolutely correct. The estate matter, however, was a different action. We question
whether the doctrine applies so broadly. (See *Riverside County Transportation Com. v.
Southern California Gas Co.* (2020) 54 Cal.App.5th 823, 838 [generally, collateral
estoppel requires a final judgment, except that an appealable order can be collateral
estoppel in a later phase of the same action].)

However, we need not decide this question. As we have already held, the trial
court properly denied both of Cazares's petitions to be appointed as trustee. Bush's will
nominated as executor "the then-acting Trustee or Trustees" of her trust. Thus, Cazares
had no right to be the executor unless he also had the right to be a trustee. The denial of
his petitions to be appointed as trustee therefore also required the denial of his petition to
be appointed as executor.

V

DISPOSITION

The orders appealed from are affirmed.  In the interests of justice, we do not award costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ

P. J.

We concur:

McKINSTER

J.

CODRINGTON

J.